IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Muttaqin F. Abdullah, #400562,       )
                                     )    Civil Action No. 6:04-23005-HFF-WMC
                    Plaintiff,       )
                                     )    **REPORT OF MAGISTRATE JUDGE**
          vs.                        )
                                     )
Sumter County Detention Center;      )
Capt. Griffin; Corporal Nobles;      )
Officer Jason Tasscone; and          )
Nurse Mrs. Joe,                      )
                                     )
                    Defendants.      )
                                     )

This matter is before the court on the defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff, who is proceeding *pro se*, alleges civil rights violations while he was held as a pretrial detainee at the Sumter-Lee Regional Detention Center ("SLRDC").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on November 19, 2004, alleging that the defendants violated his constitutional rights. On May 27, 2005, the defendants filed a motion for summary judgment. By order filed May 27, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion on June 7, 2005.

## **FACTS PRESENTED**

The plaintiff was arrested on March 14, 2004, for possession of a firearm on an ABC premises, felony possession of a handgun, assault and battery with intent to kill, and murder. On that same date, he was incarcerated at SLRDC. On July 20, 2004, the plaintiff was charged with assaulting defendant correctional officer Jason Tasscone. According to the affidavit of Tami Griffin, the captain in charge of security at SLRDC, an adjustment committee hearing was conducted by Sergeant Brooks on July 20, 2004. After a review of the evidence, Sergeant Brooks found the plaintiff guilty of the charge of assaulting a correctional employee. His canteen and telephone privileges were suspended for 30 days. Also, he was placed on administrative lockdown for 60 days, and he was placed on a nutriloaf diet for seven days. According to Captain Griffin, the plaintiff was allowed a telephone call every seven days during the 30-day period, with no limit on his attorney calls. Captain Griffin also testified in her affidavit that because of the plaintiff's violent demeanor and tendencies, he was placed in restraints whenever he was removed from his cell during the lockdown period (Griffin aff. ¶¶ 1-4, ex. A, B).

On August 14, 2004, the plaintiff was charged with having contraband in his cell. The following day, he was charged with threatening an officer, cursing an officer, and disrupting the normal operations of the facility. On August 18, 2004, Lieutenant McMillan conducted an adjustment committee hearing to review the charges, finding the plaintiff guilty. His canteen privileges were suspended for 60 days, his telephone privileges were suspended for seven days, and he was placed on administrative lockdown for 60 days. A nutriloaf diet was imposed for seven days beginning August 19, 2004 (Griffin aff. ¶ 5, ex. C-F).

On August 19, 2004, the plaintiff filed a grievance/request form stating that he was depressed from being in lockdown and that he needed to be able to walk around in order to prevent blood clots from forming due to his phlebitis condition (comp. at 4).

2

Once Nurse Joe of the SLRDC verified that the plaintiff needed to walk to prevent blood clots, Captain Griffin issued a directive on August 30, 2004, to all supervisors and officers at the SLRDC notifying them that the plaintiff would be allowed to walk up to five laps per day around the B Pod.  The memorandum noted that the plaintiff would be restrained with belly chains only when he was out of his cell so that he could get the needed exercise.  The memorandum further noted that the exercise needed to take place when no other inmates were out of their cells and that the plaintiff was "dangerous and should be treated with maximum security measures" (Griffin aff. ¶ 6, ex. G).

The plaintiff alleges that on September 4, 2004, he filed a grievance requesting the right to make unlimited attorney telephone calls at a decent hour.  He alleges that because he was allowed to leave his cell only after 6:00 p.m., he could not call his attorney (comp. 4-5).

Captain Griffin testified in her affidavit that she reviewed the plaintiff's file and the SLRDC's records and found no grievances filed by the plaintiff asking for her to review the findings of any of the adjustment committee hearings conducted to evaluate his offenses (Griffin aff. ¶ 7).  Captain Griffin further testified that while the plaintiff's personal telephone calls were curtailed due to his behavior problems, his ability to confer with his attorney was not impacted.  In addition to his ability to call, Captain Griffin testified that the plaintiff also had the options of writing or personally meeting with his attorney (Griffin aff. ¶ 8).

The plaintiff alleges that his constitutional rights were violated in that he was not given recreation time every day, the defendants were deliberately indifferent to his serious medical needs, his grievances were unanswered, and he was not allowed to contact his attorney by telephone during working hours.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

4

the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff first alleges that he was subjected to cruel and unusual punishment during his time in segregation because he was denied recreation time and was allowed out of his cell only for showers (comp. 3-5).  Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment.  *Bell v. Wolfish,* 441 U.S. 520, 535 (1979).  Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt.  *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992).  Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense.  *Id.* (citing *Bell,* 441 U.S. at 53).  Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose.  *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

The defendants argue that the because of the nature of the charges against the plaintiff and the multiple security infractions he committed during his incarceration at SLRDC, which included assaults on two correctional officers, "in order to avoid further serious situations in which individuals may be attacked and injured seriously, it was deemed necessary to separate the plaintiff completely from other detainees and staff as much as

5

possible" (def. m.s.j. at 4).  The plaintiff has failed to produce evidence indicating that the conditions and restrictions of his segregation were imposed with the express intent to punish him or that they were not rationally connected to maintaining  security at the facility and were excessive in relation to that purpose.

Further, the plaintiff has failed to show that he was deprived of a basic human need and deliberate indifference on the part of the prison officials.  In a similar unreported case, *Meyer v. Miro*, No. C.A. 4:01-4260-25BH, 2003 WL 23198856 (D.S.C. 2004), the plaintiff inmate admitted to violating prison policy.  However, he complained that the conditions of his segregation amounted to cruel and unusual punishment as he was stripped of his mattress and bedding material, and he was confined in only his underwear on multiple occasions consisting of five to 20-day periods for various infractions.  The court noted that the plaintiff was not actually denied a mattress, outside recreation, and clothing, as possession of these items was dependent upon the inmate's compliance with policy and procedure.  *Id.* at *1 n. 1.  Further, the court noted that an inmate must show more than *de minimis pain* or injury.  *Id.* at *8.  Other than his unsubstantiated claims, there is no evidence that the plaintiff in the instant case suffered any injury during his time in segregation.  While he claims that he needed recreation "to prevent bloodclots from occurring in his legs" (comp. at 4), he makes no statement that his condition was worsened or aggravated in any manner because of his lockdown status.  Further, after the staff was advised of his phlebitis, the plaintiff was given an opportunity to exercise every day.  Based upon the foregoing, the claim fails.

The plaintiff next appears to allege the defendants were deliberately indifferent to his serious medical needs (comp. at 3-4).  "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the

6

detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4ᵗʰ Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976).  This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services.  *Id.*  The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.  As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach.  *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto."  *Sires v. Berman*, 834 F.2d 9, 12 (1ˢᵗ Cir. 1987).  A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1ˢᵗ Cir. 1990), *cert. denied,* 500 U.S. 956 (1991).  "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment.  *Id.*  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged.  *Wright v. Collins*, 766 F.2d 841, 849 (4ᵗʰ Cir. 1985).

The plaintiff has failed to show either a serious medical need or that the defendants were deliberately indifferent to his need.  The plaintiff references the possibility

that blood clots could form, but he makes no allegation that he actually experienced any difficulties due to his lockdown status. Further, the evidence shows that once the staff was advised of his phlebitis, the plaintiff was given an opportunity to exercise every day. Based upon the foregoing, this claim fails.

The plaintiff next alleges that his grievances regarding the suspension of his privileges went unanswered (comp. 3-4). Presumably, the plaintiff is alleging that his right to procedural due process was violated. As noted by the defendants, inmates do not have a constitutionally protected right to a grievance procedure. *See e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.") (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). A prison grievance procedure does not confer any substantive right upon inmates. Therefore, it does not give rise to a protected liberty interest requiring the procedural protection provided by the Fourteenth Amendment. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1983).

Lastly, the plaintiff alleges that he was denied the right to telephone his attorney before 6:00 p.m., violating his constitutional rights. As noted by the defendants, assuming the plaintiff's allegations are true, he had other means to contact his attorney, either by writing or personal visits from his attorney (Griffin aff. ¶ 8). Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it was excessive in relation to that purpose. *Bell*, 441 U.S. at 537-40; *Martin,* 849 F.2d at 870.

As discussed above, the defendants maintain that because of the nature of the charges against the plaintiff and the multiple security infractions he committed during his incarceration at SLRDC, "in order to avoid further serious situations in which individuals may be attacked and injured seriously, it was deemed necessary to separate the plaintiff

completely from other detainees and staff as much as possible" (def. m.s.j. at 4).  The

plaintiff has failed to produce evidence indicating that the conditions and restrictions of his

segregation, including the limitation on when he could make telephone calls to his attorney,

were imposed with the express intent to punish him or that they were not rationally

connected to maintaining security at the facility and were excessive in relation to that

purpose.  Furthermore, "[p]rison administrators therefore should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their judgment are

needed to preserve internal order and discipline and to maintain institutional security." *Bell*,

441 U.S. at 547.  "'Such considerations are peculiarly within the province and professional

expertise of corrections officials, and, in the absence of substantial evidence in the record

to indicate that the officials have exaggerated their response to these considerations, courts

should ordinarily defer to their expert judgment in such matters.'" *Id.* at 547-48 (quoting *Pell*

*v. Procunier*, 417 U.S. 817, 827 (1974)).  Based upon the foregoing, the claim fails.

To the extent the plaintiff may be alleging a claim of denial of access to the

courts, in order to have standing to bring such a claim, he must show that a non-frivolous

legal claim was frustrated or impeded.  *Lewis v. Casey*, 518 U.S. 343 (1996).  The plaintiff

has made no such showing.

To the extent that the plaintiff's complaint can be perceived to state additional

claims under state law,  the court should decline to exercise supplemental jurisdiction over

the claims as it is recommended that summary judgment be granted on the plaintiff's

federal claims.  *See* 28 U.S.C. §1367(c).

The defendants also argue that they are entitled to qualified immunity.  This

court agrees.  Qualified immunity protects government officials performing discretionary

functions from civil damage suits as long as the conduct in question does not "violate clearly

established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a

constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

November 16, 2005

Greenville, South Carolina

10